IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

RICHARD PARRISH,                    )
                                    )
        Petitioner,                 )
                                    )
v.                                  )    No.  12-3222
                                    )
UNITED STATES OF AMERICA,           )
                                    )
        Respondent.                 )

OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

This cause is before the Court on Petitioner Richard Parrish's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (§ 2255 Motion) (d/e 1).  In the Motion, Petitioner seeks to vacate his federal sentence on the following grounds: (1) he was erroneously classified as a career offender; (2) the presiding judge should have recused herself from the proceedings; and (3) he received ineffective assistance of trial and appellate counsel.  For the reasons that follow, the § 2255 Motion is DENIED.

## I.  FACTS

In April 2009, Petitioner was indicted on two counts of distribution of crack cocaine in Case No. 09-30032, United States District Court for the Central District of Illinois.  See Indictment, Case No. 09-30032 (d/e 8); 21 U.S.C. § 841(a)(1).  In

August 2009, Petitioner entered an open plea of guilty to both counts before United States District Judge Jeanne E. Scott.  See August 31, 2009 Change of Plea Transcript, Case No. 09-30032 (d/e 23).  Petitioner was represented by appointed counsel Jon Gray Noll.

The probation officer who prepared the Presentence Investigation Report (PSR) concluded that Petitioner qualified as a career offender.  PSR, Case No. 09-30032 (d/e 18); see also U.S.S.G. § 4B1.1(a) (2009) (a career offender is a defendant who in the instant case is at least 18 years of age and convicted of a crime of violence or controlled substance offense, and who also has at least two prior felony convictions of a crime of violence of controlled substance offense).  Specifically, the PSR found that Petitioner had at least two prior felony convictions for crimes of violence or controlled substance offenses.  Id. at p. 9.  Those prior convictions included the following state court convictions: (1) a second degree murder conviction in Sangamon County Case No. 95-CF-171 when Petitioner was 15 years old; (2) a manufacture/delivery of a controlled substance conviction in Sangamon County Case No. 01-CF-895; and (3) a domestic-battery conviction in Sangamon County case No. 06-CF-538.  Id.  The PSR noted that Petitioner was a minor at the time of the second-degree murder offense.  Petitioner was convicted as an adult but sentenced under the provisions of the Juvenile Court Act.  Id. at p. 13.  The PSR also reflected that on the domestic-battery conviction, the Count

Petitioner pleaded guilty to had charged Petitioner with knowingly and without legal justification causing bodily harm to a household member by striking her with his fist.  Id. at pp. 21-22.

At the January 2010 sentencing hearing, defense counsel objected to the career offender designation.  See January 25, 2010 Sentencing Transcript, Case No. 09-30032 (d/e 24); see also Defendant's Commentary on Sentencing Factors, Case No. 09-30032 (d/e 12).  While counsel conceded that Petitioner's prior felony drug conviction was a qualifying offense, he argued that Petitioner's other two state court convictions—the one for second degree murder and the other for domestic violence—did not support a career offender designation.  Sentencing Tr. pp. 7-9, Case No. 09-30032 (d/e 24).  Counsel argued that the second degree murder conviction did not support a career offender designation because Petitioner was sentenced as a juvenile and served time in the juvenile Department of Corrections.  Id. at p. 7.  Counsel also argued that the domestic-violence conviction did not support a career offender designation because the victim was not injured. Id. at p. 8-10.

The Court found that Petitioner qualified as a career offender.  Id. at pp. 14-16.  Specifically, the Court found the conviction for manufacture or delivery of a controlled substance qualified Petitioner as a career offender.  Id. at 15.  The Court also found that, even though Petitioner only needed one other qualifying

conviction, both of Petitioner's other convictions qualified as a predicate offense for career offender status.  Specifically, the Court found the second degree murder conviction qualified as a predicate offense for career offender status because Petitioner was tried and convicted as an adult, even though he was sentenced as a juvenile.  Id. at 15.  The Court also found that the domestic-battery conviction qualified as a predicate offense for career offender status because the charging instrument alleged Petitioner knowingly and without legal justification caused bodily harm to the victim by striking her with his fist.  Id.  at p. 16.

Petitioner's sentencing guideline range was 262 to 327 months.[1]  The Court sentenced Petitioner to 250 months imprisonment on each of Counts 1 and 2 to run concurrently.

Petitioner filed a notice of appeal and a different attorney, Mark D. Stuaan, was appointed to represent Petitioner.  See Case No. 09-30032 ( d/e 14, 22).  Appellate counsel moved to withdraw pursuant to Anders v. California, 386 U.S. 738, 744 (1967), and Petitioner opposed counsel's submission.  See United States v. Parrish, 422 Fed. App'x 540, 542 (7th Cir. 2011).

---

[1] Without the career offender designation, Petitioner would have had a total offense level of 31 and a criminal history of VI, which would have resulted in a sentencing guideline range of 188 to 235 months.  However, given the recent amendments to the Sentencing Guidelines, Petitioner may have been eligible for a reduction in sentence had he not been sentenced as a career offender.  In March 2012, Petitioner sought a reduced sentence due to the recent amendments to the Sentencing Guidelines that lowered the sentencing range for crack offenses but the motion was denied because Petitioner was sentenced as a career offender.  See Case No. 09-30032 (d/e 37).

The Seventh Circuit granted appellate counsel's motion to withdraw and dismissed the appeal.  Id.  As is relevant to Petitioner's § 2255 Motion, the Seventh Circuit found frivolous any argument that Petitioner's second degree murder conviction could not support a career offender designation because Petitioner was 15 at the time of the offense and served his sentence in a juvenile facility.  Id.  The Seventh Circuit stated that Petitioner "was tried and convicted as an adult, and our analysis turns on how a juvenile was convicted rather than how he was sentenced."  Id., citing United States v. Gregory, 591 F.3d 964, 967 (7th Cir. 2010).

The Seventh Circuit also found frivolous the argument that the domestic-battery offense was nonviolent because the victim offered to testify at Petitioner's sentencing that she was not injured.  Parrish, 422 Fed. App'x at 543.  The Seventh Circuit stated "we consider only the battery conviction itself and not the underlying facts to decide if an offense is a crime of violence."  Id.

On August 23, 2012, Petitioner filed his § 2255 Motion.[2]  Pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings, this Court examined the Motion, found that summary dismissal was not warranted, and directed the United States to file an answer, motion, or other response.  See August 27, 2012 Text Order.  On September 24, 2012, the United States filed a response requesting that

---

[2] Although Rule 4 of the Rules Governing Section 2255 Proceedings for United States District Courts provides that the § 2255 Motion shall be forwarded to the judge who conducted the trial and imposed sentence, Judge Scott retired from her position as a United States District Judge effective August 1, 2010.

the Court deny the Motion (d/e 3).  Petitioner filed a Reply (d/e 5) and a

Supplement (d/e 6).

After reviewing the transcripts and records of the prior proceeding in Case

No. 09-30032, as well as the parties' pleadings herein, the Court finds that an

evidentiary hearing is not warranted.  See Rule 8 of the Rules Governing Section

2255 Proceedings For the United States District Courts.  For the reasons discussed

below, this Court finds that the record conclusively shows that Petitioner is not

entitled to relief.  See Politte v. United States, 852 F.2d 924, 931 (7th Cir. 1988)

(an evidentiary hearing is not required where the record "conclusively

demonstrates that defendant is entitled to no relief") (citation and internal quotation

marks omitted).

## II.  ANALYSIS

Section 2255 allows a federal prisoner to attack his sentence on the ground

that the sentence was imposed in violation of the Constitution or laws of the United

States, the court was without jurisdiction to impose such sentence, the sentence

was in excess of the maximum authorized by law, or that the sentence is otherwise

subject to collateral attack.  28 U.S.C. § 2255(a).  "Habeas corpus relief under 28

U.S.C. § 2255 is reserved for extraordinary situations."  Prewitt v. United States,

83 F.3d 812, 816 (7th Cir. 1996).

**A.    Petitioner's Career Offender Claim is Barred by the Law-of-the-Case Doctrine**

The career offender sentencing guideline provides as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (2009).  Petitioner does not dispute that he met the first two qualifications for career offender status: he was at least 18 years old at the time he committed the federal offense and the federal offense was a felony controlled substance offense.  Instead, Petitioner argues he did not meet the third factor because he only had one qualifying prior felony conviction.  Specifically, Petitioner argues the district court erred by finding Petitioner was a career offender based on the second degree murder and domestic-battery convictions.

Petitioner claims his second degree murder conviction should not have counted toward the career offender classification because the Illinois standard for classifying a juvenile as an adult is low (Pet'r's Mem. p. 15 (d/e 1-1)) and because the case actually resulted in a juvenile delinquent conviction and sentence (Supp. p. 2 (d/e 6)).  Petitioner also claims the domestic-battery conviction should not have counted as a predicate offense because he did not physically harm the victim

so the offense was not a crime of violence.  See Pet'r's Mem. pp. 12-13 (d/e 1-1);
Pet'r's Reply pp. 2-3 (d/e 5).

Petitioner is not entitled to § 2255 relief on this claim because of the law-of
–the-case doctrine bars Petitioner from relitigating the career offender issue absent
a changed circumstance.  Olmstead v. United States, 55 F.3d 316, 319 (7th Cir.
1995) (holding that "in the absence of changed circumstances of fact or law, we
will not reconsider an issue which was already decided on direct appeal").  The law
of the case must be followed unless "(1) a subsequent trial produces substantially
different evidence, (2) controlling authority has since made a contrary decision of
law applicable to the issue, or (3) the prior decision was clearly erroneous and
would work manifest injustice."  White v. United States, 371 F.3d 900, 902 (7th
Cir. 2004) (internal quotation marks and citations omitted).

On direct appeal, the Seventh Circuit held there were no non-frivolous issues
on appeal.  The Seventh Circuit specifically noted that a challenge to Petitioner's
career offender categorization would be frivolous.   Parrish, 422 Fed. App'x  at
542-43.  Even though the issues on direct appeal were raised in an Anders brief,
the Seventh Circuit's decision still constitutes a binding adjudication.  White, 371
F.3d at 903 ("Presented is presented, whether in an Anders brief or in any other
format; and if an appeal is dismissed as frivolous, that is a binding adjudication
that the claims presented in it had no merit at all, rather than an invitation to

refile.").  Because the Seventh Circuit has already decided the career offender issue on direct appeal and Petitioner has not pointed to any changed circumstances of law or fact, this Court will not reconsider this issue.

**B.    Petitioner is Not Entitled to Relief on his Claim that Judge Scott Should Have Recused Herself**

Petitioner also argues in his § 2255 Motion that Judge Scott should have <u>sue sponte</u> recused herself from the federal case because she presided over Petitioner's state court murder case (Sangamon County case No. 95-CF-171) for a period of time and the state court conviction was used to designate Petitioner as a career offender in the federal case.  <u>See</u> Pet'r's Mem. p. 18 (d/e 1-1); <u>see also</u> Docket Sheet attached to Pet'r's Supp.  (d/e 6).  Although Petitioner did not raise this claim as a possible ground on direct appeal, the United States does not assert procedural default as a defense to this claim and has, therefore, waived the procedural default.  <u>See</u>, <u>e.g.</u>, <u>Torzala v. United States</u>, 545 F.3d 517, 522 (7th Cir. 2008) (finding that "[b]ecause the government did not assert procedural default as a defense in this action but instead chose to respond on the merits, . . . the government has waived the procedural default"). [3]

---

[3] Even if the Government had not forfeited the argument that Petitioner forfeited this claim, the Court could have reached the merits of Petitioner's claim because Petitioner also asserts that trial counsel was ineffective for failing to address recusal.  Pet'r's Supp. p. 4 (d/e 6).  The record shows that defense counsel was aware of Judge Scott's prior involvement because counsel noted at the sentencing hearing that both he and Judge Scott were involved in Petitioner's state court case that resulted in the second degree murder conviction.  <u>See</u> Sentencing Tr. p. 6-7, Case No. 09-30032 (d/e 24).  Nonetheless, counsel did not seek Judge Scott's recusal.

Turning to the merits, this Court notes that the state court Docket Sheet (a portion of which is attached to Petitioner's Supplement (d/e 6) and which is also available at the Sangamon County Clerk's website) shows that in June 1995 Judge Scott accepted Petitioner's guilty plea to first degree murder.  See  Docket Sheet attached to Supp. (d/e 6).  In November1995, Judge Scott granted Petitioner's motion to withdraw his guilty plea.  Id.  In December 1995, Petitioner presented a motion for substitution of judge.  Id.; see 725 ILCS 5/114-5(a) (providing  a defendant an absolute right to a substitution of judge if the defendant files a written motion for substitution within 10 days of the cause being placed on the trial call of the judge).  Judge Scott recused herself and referred the matter for reassignment. [4] Docket Sheet attached to Supp. (d/e 6).  A jury ultimately found Petitioner guilty of second degree murder.  See PSR, Case No. 09-30032, p. 14 (d/e 18).

In his § 2255 Motion and the Supplement thereto, Petitioner asserts that Judge Scott should have recused herself, pursuant to 28 U.S.C. § 455, from presiding over his federal case because of her involvement in the state court murder case.  Section 455 requires that a judge "shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned."  28 U.S.C. § 455(a).

---

[4]  Coincidentally, the matter was referred to the undersigned judge, who at the time was the presiding judge in state court, for reassignment and the case was reassigned to Judge Leo J. Zappa.

The mere fact of Judge Scott's involvement in the state court murder case did not warrant recusal.  Barbary v. Illinois, 2011 WL 219588, at *1 (N.D. Ill. 2011) (finding that "the mere fact that this court presided over [the plaintiff's] prior case is insufficient to satisfy [§] 455(a)").  Petitioner asserts, however, that Judge Scott should have recused herself from the federal case because she had recused herself from the state case at Petitioner's request because of a "conflict of interest." See Supp. p. 2 (d/e 6)

Yet, a prior recusal, without more, does not demonstrate bias or prejudice. Diversified Numismatics, Inc. v. City of Orlando, Fl., 949 F.2d 382, 385 (11th Cir. 1991).  Although Petitioner asserts Judge Scott recused herself because of a "conflict of interest," Petitioner provides no evidence of the reason for Judge Scott's recusal in the earlier case.  The docket entry reflects only that Petitioner's Motion for Substitution of Judge was granted.  See Docket Sheet attached to Supp. (d/e 6).  Moreover, even if Judge Scott recused herself from the state court case due to a conflict of interest, Petitioner presented no evidence that conflict of interest remained at the time of Petitioner's federal case.  Because Petitioner has no evidence that Judge Scott's prior recusal was due to actual bias or prejudice, he has failed to demonstrate that Judge Scott should have recused herself in the federal case.  See United States v. Balistrieri, 779 F.2d 1191, 1216 (7th Cir. 1985) (where the prior recusal was due to an appearance of bias, as opposed to actual bias or

prejudice, the prior recusal did not constitute evidence that the judge was biased or prejudiced against the party in a case that arose five years later); United States v. Merkt, 794 F.2d 950, 960 (5th Cir. 1986) (finding that the facts regarding the district judge's recusal in a prior case did not "indicate that a reasonable person would harbor doubts as to [the Judge's] impartiality based solely on his prior recusal").

Petitioner also argues that Judge Scott improperly used in the federal case information she learned in the state case. Petitioner argues that Judge Scott used her prior knowledge of the state case "to abuse her authority, deny justice and misconstrue the facts." Pet'r's Supp. p. 2 (d/e 6). In particular, Petitioner claims Judge Scott incorrectly found that Petitioner was tried and convicted as an adult in the state court. Pet'r's Supp. p. 3 (d/e 6).

To the extent Petitioner argues that Judge Scott formed certain opinions in the state court case, opinions formed by a judge in the course of a prior proceeding do not "constitute a basis for a bias or partiality motion unless they display deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994). Petitioner has not presented any evidence of "deep-seated favoritism or antagonism" by Judge Scott.

In fact, Judge Scott's finding that Petitioner was tried and convicted as an adult was not false or inaccurate. The PSR indicated that Petitioner was tried as an

adult and sentenced as a juvenile.  <u>See</u> PSR pp. 13-14, Case No. 09-30032 (d/e 18).

In addition, the Seventh Circuit found, on direct appeal, that Petitioner was tried

and convicted as an adult.  <u>Parrish</u>, 422 Fed. App'x at 542.  Moreover, this Court

takes judicial notice of the opinion of the Appellate Court of Illinois, Fourth

District, in <u>People v. Parrish</u>, No. 4-96-0386 (June 17, 1997), which affirmed

Petitioner's conviction for second degree murder in case No. 95-CF-171.  <u>See</u>

<u>Retired Chicago Police Ass'n v. City of Chicago</u>, 7 F.3d 584, 609 n. 30 (7th Cir.

1993) (noting that the court can take judicial notice of the decisions of federal and

state courts).  The appellate court noted that Petitioner was tried as an adult, found

guilty, and sentenced as a juvenile.  <u>People v. Parrish</u>, No. 4-96-0386 (June 17,

1997).

Because Petitioner has presented no evidence that a reasonable person would

believe that Judge Scott was unable to decide Petitioner's case impartially,

Petitioner is not entitled to relief on this ground.

## C.    Trial and Appellate Counsel Were Not Ineffective

Petitioner last claims his trial and appellate counsel provided him ineffective

assistance of counsel.  To show ineffective assistance of counsel, a petitioner must

demonstrate: (1) his counsel's performance was deficient; and (2) the deficient

performance prejudiced the defense and deprived him of a fair trial, a trial with a

reliable result.  See <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).   In

determining whether counsel's performance was prejudicial, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability is a probability sufficient to undermine the confidence in the outcome." Id. A court need not address the question of counsel's performance if it is easier to dispose of the claim due to a lack of prejudice. Id. at 697; Taylor v. Bradley, 448 F.3d 942, 949 (7th Cir. 2006).

### 1. Trial Counsel Was Not Ineffective

Petitioner asserts that his trial attorney did not advise him of the potential career offender enhancement prior to the change of plea hearing. In his Declaration, attached to his § 2255 Motion, Petitioner asserts that when his defense counsel advised him to plead guilty, he did not explain that Petitioner could or would be considered a career offender. Declaration ¶ 2 (d/e 1-1). Counsel did not tell Petitioner what the qualifications were for the court to sentence Petitioner as a career offender. Id. at ¶ 4. According to Petitioner, counsel told him "two of the charges that [Petitioner] had been found guilty of in the past would not count toward the calculation of [his] sentence." Id. Petitioner also claims that had he been told he could be considered a career offender, he would have opted to proceed to trial. Id. at ¶ 3.

Petitioner further claims that the first he heard of the career offender enhancement was at the change of plea hearing and that he merely acquiesced to his attorney's prompting and advice and stated "yes" on the record when Judge Scott asked him if he understood.  Pet'r's Reply p. 4 (d/e 5).  Petitioner asserts that he was prejudiced by his counsel's ineffective assistance.  Id.

Petitioner's assertion that counsel failed to advise him of the possibility of a career offender enhancement is refuted by the record.  See e.g. Gallo-Vasquez v. United States, 402 F.3d 793, 799 (7th Cir. 2005) (affirming summary dismissal of claim that counsel was ineffective for failing to bring an interpreter to their meetings; the record refuted the petitioner's claim that a language barrier prevented him from communicating with counsel).  At the outset of the plea hearing, defense counsel stated:

> This is an open plea, if you will.  There is no plea
> agreement between the defendant and the Government.  I
> have advised the defendant of his rights under the
> sentencing guidelines and various statutory scenarios
> such as career offender.

Change of Plea Tr., p. 3, Case No. 09-30032 (d/e 23).  Later at the plea hearing, Judge Scott asked Petitioner whether he and his counsel talked about the guidelines and how they might apply in his case.  Petitioner responded, "Yes, Your Honor." Change of Plea Tr. p. 18, Case No. 09-30032 (d/e 23).  Therefore, the record clearly refutes Petitioner's claim.

Moreover, Petitioner cannot show he was prejudiced.  Petitioner must show that his trial counsel's advice was a "decisive factor" in his decision to plead guilty instead of going to trial.  Wyatt v. United States, 574 F.3d 455, 458 (7th Cir. 2009) (finding that even if counsel were deficient for assuring the defendant that he would not be subject to a career offender sentence, defendant could not show prejudice because the allegedly deficient advice did not play a decisive factor in the defendant's decision to enter a conditional plea), cert. denied 130 S. Ct. 1925 (2010).   Plaintiff's mere assertion that he would have opted for trial had he known he might qualify as a career offender is not sufficient to demonstrate prejudice. Id.; see also Bethel v. United States, 458 F.3d 711, 718 (7th Cir. 2006) (finding the defendant could not show prejudice because the district court advised the defendant that his sentence could be more severe than he expected).  In addition, Petitioner's plea colloquy demonstrates his decision to plead guilty was not predicated upon any specific sentence.  See Wyatt, 574 F.3d at 458; Bethel, 458 F.3d at 718-19.

At the plea hearing, Judge Scott advised Petitioner of the maximum possible penalties, including imprisonment of up to 30 years on Count 1 due to a prior felony drug conviction and a minimum of 10 years and up to life on Count 2. Sentencing Tr. p. 9-10, Case No. 09-30032 (d/e 24).  Petitioner agreed that he understood the possible penalties.  Id.

Judge Scott explained that Petitioner was pleading guilty without a plea agreement, meaning that there was no agreement that he would receive a particular sentence.  Id. at 17.  Petitioner agreed he was pleading guilty with that understanding.  Id.  Judge Scott advised Petitioner that the Court would decide Petitioner's sentence after determining the sentencing guideline range and considering the other factors in sentencing.  Id. at p. 17-18, 20.  Petitioner indicated that he understood.  Id. at 19, 20.

Petitioner admitted having talked to his attorney about the guidelines and how they might apply in his case.  Id. at 18.  Judge Scott again advised Petitioner that, at least as to Count 1, she could sentence Defendant to more or less time than the guideline range indicated if the other evidence made it more reasonable to do so.  Id. at p. 20.  Petitioner stated that he understood.  Id. at 20.

Judge Scott explained that the probation officer would prepare a PSR that would provide information about Petitioner's background, including his criminal record.  Id. at 22.  Judge Scott advised Petitioner that he would have the chance to review the PSR and make objections to it but that she would be the one deciding the challenges to the PSR and deciding Petitioner's sentence.  Id. at 22-23.  Petitioner admitted he understood. Id. at 22-23.

Petitioner denied that any one threatened or forced him to plead guilty.  <u>Id.</u> at 18.  When asked if anyone promised him anything to plead guilty, Petitioner responded, "No, Your Honor."  <u>Id.</u> at p. 18.

The plea colloquy demonstrates that counsel's alleged failure to advise Petitioner that he might be subject to a career offender enhancement did not play a decisive factor in Petitioner's decision to enter his plea.  Petitioner knew that he was not agreeing to a particular sentence.  The fact that Petitioner may have been subject to a career offender designation that would increase his sentence was not a factor in pleading guilty where Petitioner knew that, even without a career offender designation, he faced up to 30 years' imprisonment on Count 1 and up to life imprisonment on Count 2.  Therefore, Petitioner has failed to demonstrate ineffective assistance of counsel.  <u>See</u>  <u>United States v. Martinez</u>, 169 F.3d 1049, 1054 (7th Cir. 1999) (finding that although the defendant "asserts that he would not have pled guilty but for his attorney's flawed predictions, his Rule 11 hearing tells a different story.  Because of the great weight we place on these in-court statements, we credit them over his later claims"); <u>United States v. Garner</u>, 2010 WL 1138930, at *4 (N.D. Ind. 2010) (finding that the petitioner failed to demonstrate that his counsel was ineffective for failing to inform him that he might receive a career offender enhancement where the statements at the plea hearing indicated the petitioner made his plea knowingly and voluntarily).

Petitioner also claims his counsel was ineffective at the sentencing hearing. At the sentencing hearing, counsel sought to call the victim of Petitioner's domestic-battery conviction to testify that she was not injured.  Sentencing Tr. p. 9-10, Case No. 09-30032 (d/e 24).  Counsel sought to show that the domestic-battery conviction was not a violent offense and therefore did not support the career offender designation.  Id. at 8.  The Court asked counsel whether he had "any law that says [the Court] can consider this in terms of the objection."  Id. at 9. Counsel responded that he did not.  Id. at 10.  Counsel then made an offer of proof. Id. at 10.  In his § 2255 motion, Petitioner asserts that counsel was ineffective for failing to cite any case law to the Court.  Petitioner asserts he was prejudiced because the Court might have departed downward based on the victim's testimony.

Trial counsel was not deficient, nor was Petitioner prejudiced.  First, Petitioner does not cite any case law that would have allowed counsel to challenge a domestic-battery conviction as a predicate offense for career offender status by calling the victim to testify that she was not injured.  In fact, the United States Supreme Court has held that "[i]n determining whether [a] crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."  Begay v. United States, 553

U.S. 137, 141 (2008).  Therefore, counsel was not deficient for failing to cite case law which does not exist.

Second, Petitioner cannot show prejudice because even if the domestic-battery conviction did not qualify as a predicate offense for career offender status, Petitioner still had two qualifying convictions.

Third, Petitioner also asserts he was prejudiced because the Court may have deviated downward in light of the victim's testimony.  In his Memorandum, Petitioner notes that Judge Scott heard from numerous witnesses who said good things about Petitioner, and that Judge Scott sentenced Petitioner to a sentence one year lower than the sentencing guideline range.  Pet'r's Mem. p. 14 (d/e 1-1). Petitioner asserts, however, "that the one witness who could have aided [Petitioner] the most was not allowed to be heard by the Court."  Id.   Petitioner identifies this witness as Candi Borrowman.

However, the PSR identified the victim of the domestic battery as Carrie Borrowman.  PSR, p. 21, Case No. 09-30032 (d/e 18).[5]  Although Carrie did not testify about the domestic-battery incident, she did testify at the Sentencing Hearing that Petitioner was a good father and a generous and caring person.

---

[5]  The Court does note, however, the confusion regarding the victim of the domestic battery. Defense counsel identified the victim as Karen (Sentencing Tr. p. 9) and Candi (Sentencing Tr. p. 9, Sentencing Commentary (d/e 12 p. 13).  Candi did not testify at the sentencing hearing.

Sentencing Tr. pp. 30-34, Case No. 09-30032 (d/e 24).  Therefore, Petitioner has failed to show prejudice.

### 2. *Appellate Counsel Was Not Ineffective*

Petitioner asserts he received ineffective assistance from his appellate counsel because appellate counsel refused to meet with Petitioner and filed an Anders brief.  Petitioner notes that he opposed the Anders brief but "did not have time to file a pro se brief separate from the Anders Brief until the matter was almost before the Court."  Pet'r's Mem. p. 19 (d/e 1-1).

"The filing of an Anders brief that fails to point out meritorious issues can, in principle, constitute ineffective assistance."  Steward v. Gilmore, 80 F.3d 1205, 1213 (7th Cir. 1996).  However, Petitioner does not identify any meritorious issue appellate counsel should have raised.

Moreover, an attorney has an ethical obligation to refuse to prosecute a frivolous appeal.  McCoy v. Court of Appeals of Wisc., Dist. 1, 486 U.S. 429, 438 (1988).  Petitioner's appellate counsel followed the proper procedure for withdrawing.  See Anders, 386 U.S. at 744 (explaining procedure for seeking to withdraw as counsel on appeal where the attorney believes an appeal would be frivolous).  Petitioner admits he was notified of his right to file a response to the Anders motion and, in fact, filed a response.  The Seventh Circuit agreed with counsel that there were no meritorious issues for appeal.  Parrish, 422 Fed. App'x

at 542.  Therefore, appellate counsel's performance was not deficient, nor was

Petitioner prejudiced.  <u>Norwood v. U.S</u>.  2011 WL 2975999, *5 (C.D. Ill. 2011)

(where <u>Anders</u> brief was accepted and found to be satisfactory on appeal, the brief

did not give rise to a colorable claim of ineffective assistance).

### III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings For the

United States District Courts, this Court declines to issue a Certificate of

Appealability.  This Court can find no reason why reasonable jurists would debate

or disagree with this Court's assessment of Petitioner's claims.  <u>See</u> <u>Miller-El v.</u>

<u>Cockrell</u>, 537 U.S. 322, 335-36 (2003); 28 U.S.C. § 2253(c)(2).

ENTER:  December 13, 2012

FOR THE COURT:


                 s/Sue E Myerscough
                 SUE E. MYERSCOUGH
                 UNITED STATES DISTRICT JUDGE